UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THEDELL DOSS and JUDY ANN MCCARROLL DOSS,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES R. GILKEY, FRANCISCO QUINTANA, NORVELL MEADORS, PETE POTTIOS, KEITH CHAMBERS, DARLENE VELTRI, SARA M. REVELL and AMBER NELSON,<br><br>Defendants. | Case No. 06-cv-216-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendants Charles Gilkey, Francisco Quintana, Norvell Meadors, Pete Pottios, Keith Chambers, Darlene Veltri, Sara M. Revell and Amber L. Nelson (Doc. 48). Plaintiff Thedell Doss has filed a response (Doc. 50), to which the defendants have replied (Doc. 51). Plaintiff Judy Ann McCarroll Doss has not responded to the subject motion.

**I.   Background**

During the relevant time period, from May 1, 2002, through July 20, 2005, plaintiff Thedell Doss and his putative wife, plaintiff Judy Ann McCarroll Doss were both inmates at the federal detention facilities in Greenville, Illinois. Mr. Doss was housed in the correctional institution – the prison – until February 2006, when he was released. Mrs. Doss was housed in the prison camp but is now imprisoned at FCI Waseca, in Minnesota.

The plaintiffs allege that the defendant prison officials failed to recognize their Cook County, Illinois, May 1991 Islamic marriage, as well as a subsequent 2002 Islamic marriage

performed while they were incarcerated at Greenville, in Bond County, Illinois. The plaintiffs were permitted to correspond for a period of time prior to 2002, until prison officials questioned whether the plaintiffs were actually and/or legally married. Certificate or no certificate, the fact of the marriage was called into question, and defendants perceived Mrs. Doss may have been a bigamist. Prison officials determined that the plaintiffs' marriages were not "legal." Therefore, the defendant prison officials did not afford Mr. and Mrs. Doss the "spousal exemption" to the rule that inmates are not permitted to correspond with one another. *See* 28 C.F.R. § 540.17. Mrs. Doss apparently divorced her then-husband and the plaintiffs were permitted to correspond for a few months, until November 2005, when their communications were again restricted, but purportedly for content-based reasons.

The plaintiffs filed this lawsuit in February 2006. Count 1 of the complaint alleges that the defendants discriminated against the plaintiffs in violation of the Equal Protection Clause. Count 2 alleges the defendants denied plaintiffs due process, in violation of the Fourteenth Amendment.

**II.    The Issues and Arguments**

The defendants make the following arguments for summary judgment:

1. Mrs. Doss failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a); therefore her claims should be dismissed without prejudice; and

2. The defendants are entitled to qualified immunity relative to Mr and Mrs. Doss's claims for damages because:

    a. Their conduct did not violate a constitutional right:

        1. Correspondence was denied based on a rule of general applicability, not due to religious or other impermissible animus, so there can be no viable equal protection claim; and

        2. There is no liberty or property interest in inmate-to-inmate

2

        correspondence, so there can be no due process violation; and

    b.    Any right that was violated was not clearly established.

As noted above, Mrs. Doss has not responded to the subject motion. Mr. Doss counters that:

1. His grievances, which were fully exhausted, should suffice for Mrs. Doss; and

2. The defendants are not entitled to qualified immunity because:

    a.    The plaintiffs were married in 1991, as confirmed by the opinion of the Bond County Clerk, and again married in 2002, in a ceremony witnessed by Greenville prison officials and as documented by a second Islamic marriage certificate;

    b.    There was no bigamy by Mrs. Doss because her previous marriage was invalid because it was bigamous (on the part of the husband); and

    c.    The defendants substantively and procedurally misapplied the applicable prison regulations, thereby evincing the defendants' discriminatory intent and denial of due process.

## III. The Evidence

At this juncture, the relevant evidence is as follows:

1. The defendants do not dispute that plaintiff produced a 1991 Islamic marriage certificate (Doc. 48, pp. 3-4).

2. On October 19, 1992, the United States District Court for the Western District of Missouri sentenced Mr. Doss to 200 months on a drug charge (Doc. 48-2, pp. 14-17).

3. Mr. Doss's Pre-Sentence Report indicates Mr. Doss was divorced from Patricia Parram; and he and Kathleen Dorsey had been living together in Kansas City, MO, and described themselves as non-blood related cousins, with no sexual relationship; however, the investigator noted that "there may be more to this relationship" (Doc. 48-4, p. 8).

4. In February 1993, prison officials in Tennessee authorized Mr. Doss to correspond with inmate Lelon Robb, who was housed at the Chillocothe Correctional Center in Missouri, based on their common law marriage, which the prison officials indicated had been "verified;" the Missouri officials concurred

3

(Doc. 48-3, pp. 31-32).

5.  Kathy Dorsey, described as Mr. Doss's common law wife, was an approved visitor for Mr. Doss in 1994 (Doc. 48- 4, p. 3).

6.  On July 23, 1996, the United States District Court for the Northern District of Illinois sentenced Mrs. Doss to 328 months on multiple drug, fraud and money laundering charges (Doc. 48-2, pp. 25-28).

7.  Mrs. Doss's Pre-Sentence Report indicates she was divorced from Lawrence McCarroll, Michael Blackwell, Mr. McCarroll (a second time) and was engaged to co-defendant Samir Hameen, who she had been seeing for 4 years (Doc. 48-4, pp. 8-9).

8.  It appears that on June 19, 2001, Mr. Doss's Unit Manager, B. Jefferson, called the Clerk of Bond County, Illinois, Randy Rietz, and was told that a marriage is recognized in Illinois regardless of whether it is recorded with the County or State (Doc. 2-2, p. 11).

9.  In September 2001, Mrs. Doss's correctional counselor, defendant Keith Chambers, contacted Cook County Office of Vital Statistics and was informed that Mrs. Doss (Judy McCarroll) had been married to William Mimms. He also learned that Cook County Circuit Court had no record of a divorce and that an Imam at the St. Louis Islamic Center (listed on the Dosses' marriage certificate) did not recognize the name "Muhammad Mateen" (the signature on the certificate) (Doc. 48-4, pp. 9-10 (Chambers' affidavit)).

10. A "Certificate of Islamic Marriage" dated September 8, 2002, exists, reflecting the plaintiffs were married at FCI Greenville, IL (Doc. 2-2, p. 16).

**IV.   The Relevant Law**

   A.   <u>Inmate Correspondence</u>

The applicable regulations governing "correspondence between confined inmates" can be found at 28 C.F.R. § 540.17, which states in pertinent part:

An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party or witness in a legal action in which both inmates are involved. Such correspondence may be approved in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence. The following additional limitations apply:

* * *

> (b)(1) The appropriate unit manager at each institution must approve of the correspondence if both inmates are housed in Federal institutions and both inmates are members of the same immediate family or are a party or witness in a legal action in which both inmates are involved.

28 C.F.R. § 540.17; *accord* Federal Bureau of Prisons ("BOP") Program Statement 5265.11 ¶ 14 (Doc. 48-3, p. 16). The Program Statement 5265.11 ¶ 12(d) further provides:

> The word "spouse" includes a common-law relationship which has previously been established in a state which recognizes this status. In states that do not, common-law relationship is not considered "immediate family." For determination of applicable state laws, the Regional Counsel is to be consulted.

(Doc. 48-3, p. 15).

B. <u>Marriage</u>

Under Illinois law, where both of the Dosses' alleged marriages occurred, a marriage must be "licensed, solemnized and registered as provided in [the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/201, et seq.]". 750 ILCS 5/201. The clerk of the county where the marriage is to be solemnized issues a marriage license and marriage certificate form, *see* 750 ILCS 5/203 and 5/207, and after the marriage is solemnized the certificate form is to be forwarded to the clerk within 10 days after the solemnization, and then registered with the County and the Department of Public Health, *see* 750 ILCS 5/209(a) and 210. "Spouse" status is conferred even when one of the statutory – or "directory" – requirements has not been met. *In re Estate of Hall*, 707 N.E.2d 201, 205 (Ill. App. Ct. 1998) (collecting cases); *see* 750 ILCS 5/305 (anyone having gone through a ceremony, who has cohabited, and who has a good faith belief they are married is a "putative spouse," thereby acquiring the legal rights of a spouse until s/he has knowledge the marriage is not legal). Of course, a marriage entered into before a prior

5

marriage is dissolved is prohibited. *See* 750 ILCS 5/212. Common law marriages contracted in Illinois after 1905 are invalid. *See* 750 ILCS 5/214.

Under Illinois law, there is a strong presumption that a marriage is valid, and the challenger must prove invalidity by a preponderance of the evidence. *See Pape v. Byrd*, 582 N.E.2d 164, 172 (Ill. 1991), (citing with approval *In re Driskell*, 555 N.E.2d 428, 433 (Ill. App. Ct. 1990)).

C. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison,* 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *see Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996).

In accordance with Federal Rule of Civil Procedure 56(e) and Local Rule 7.1(c), failure to respond to a motion for summary judgment can be construed as an admission of the merits of the motion.

## V. Analysis

### A. Mrs. Doss: Exhaustion of Administrative Remedies

The defendants argue that Mrs. Doss failed to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a), so her claims should be dismissed without prejudice.

While not jurisdictional *per se*, exhaustion is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 739 (2001)*; Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535-37 (7th Cir. 1999).

Failure to exhaust administrative remedies as required by § 1997e(a) is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). "Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000). "Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." *Perez*, 182 F.3d at 536. Although in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 1620 (2009), the Court of Appeals included a hearing as one of the steps in determining whether the exhaustion requirement has been satisfied prior to proceeding to the merits of a case, in this situation there are no disputed facts regarding exhaustion, only a legal question. Therefore, there is no reason to conduct an evidentiary hearing.

Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"

*Woodford,* 548 U.S. at 90 (quoting *Pozo,* 286 F.3d at 1024) (emphasis in original)). Proper use of the prison grievance system requires a prisoner to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo,* 286 F.3d at 1025; *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). Substantial compliance is insufficient. *Lewis v. Washington*, 300 F.3d 829, 833-34 (7th Cir. 2002). However, a remedy that prison officials impede a prisoner from using is "unavailable." *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Dole*, 438 F.3d at 811-12. Not ruling on a grievance, not providing necessary forms and otherwise preventing access to administrative remedies have been found to render administrative remedies unavailable – even when the act or inaction was by a prison official not directly involved in the grievance process. *Dale*, 376 F.3d at 656 (listing cases).

The defendants have submitted the affidavit of BOP attorney Tracy Knutson indicating that a search of prison records and the electronic grievance tracking system did not reveal any grievances regarding correspondence privileges filed by Mrs. Doss (a.k.a. inmate Judy McCarroll, Register No. 08864-424), whether accepted or rejected (Doc. 48-2, pp. 3-4). Mrs. Doss has not responded to the subject motion. The record does not contain copies of any grievances lodged by Mrs. Doss. Therefore, in accordance with Federal Rule of Civil Procedure 56(e) and Local Rule 7.1(c), failure to respond to a motion for summary judgment can be construed as an admission of the merits of the motion. Consequently, all claims relative to Mrs. Doss could be dismissed without prejudice due to her failure to exhaust administrative remedies.

Insofar as Mr. Doss has responded to the motion for summary judgment on behalf of Mrs. Doss, the law is clear – a non-attorney cannot represent anyone but himself. *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 803 (7th Cir. 1986). However, the grievances submitted with the complaint, which were lodged by Mr. Doss, could arguably satisfy the exhaustion

8

requirement for Mrs. Doss. Therefore, before dismissing Mrs. Doss's claims, the Court considers the following points.

"Vicarious exhaustion" has been permitted in class actions. *See Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004). In *Jones v. Berge*, 172 F. Supp. 2d 1128 (W.D. Wisc. 2001), Judge Crabb interpreted the exhaustion requirement in the Prison Litigation Reform Act ("PLRA") as being analogous to the exhaustion requirement applicable to Title VII cases, which permit a single class member to exhaust on behalf of a class. Judge Crabb found that the objectives of the PLRA were satisfied and not compromised by that approach, since prison officials were permitted to address the issues common to the class. *See also Meisberger v. Donahue*, 245 F.R.D. 627 (S.D. Ind. 2007) (allowing vicarious exhaustion in a class action). In an unpublished decision, *McGoldrick v. Werholtz*, 185 Fed. Appx. 741 (10th Cir. 2006), the Court of Appeals for the Tenth Circuit rejected such "vicarious exhaustion," at least where a class had not been certified, based on the notion that a *pro se* plaintiff cannot in any manner represent another for any purpose. Similarly, in *Mann v. Donald*, No. 7:08-CV-5 (HL), 2009 WL 811577 (M.D. Ga. Mar. 25, 2009) (adopting a Report and Recommendation at 2009 WL 811574 (M.D. Ga. Feb, 24, 2009)), vicarious exhaustion was not permitted in a multi-plaintiff prisoner civil rights action, where each prisoner-plaintiff allegedly was beaten by their tactical team at various times (a policy and practice situation).

The case at bar presents a very unusual fact pattern wherein, similar to a class action, there is nothing unique about each plaintiff's situation that would warrant separate grievances, and requiring Mrs. Doss to exhaust administrative remedies would truly be redundant from an administrative standpoint. Although 28 C.F.R. § 540.17(b)(1) requires the unit manager at each inmate's institution to approve inmate-to-inmate correspondence, in this situation the prison

9

officials making the determination were the same. The unit managers at the camp and at the prison did approve the correspondence (Doc. 48, pp. 31-32; Doc. 2-2, pp. 3-4, 22 and 24). However, defendant Chambers, who has worked as a counselor at both facilities (Doc. 48, p. 2), and in his capacity as Mrs. Doss's counselor undertook an investigation as to whether the plaintiffs were married (Doc. 48, p. 4; Doc. 48-4, pp. 7-10). The defendant wardens and associate wardens also were working simultaneously for the camp and the prison (Doc. 48, p. 2). According to Program Statement 5265.11, ¶12, regarding inmate correspondence (Doc. 2-2, p. 6), the warden has the ultimate say regarding inmate-to-inmate correspondence. Mr. Doss's grievance, which identifies Mrs. Doss and details the argument that they are in fact married, was denied by the warden.

Although the unusual intermingling of the camp and prison may make it appealing to find vicarious exhaustion, several factors stand out that mitigate against such a ruling. First and foremost, Mrs. Doss has not responded to the subject motion to plead her own case. Second, *Lewis*, *Woodford*, *Pozo* and *Dole*, all cited above, require strict compliance with prison grievance procedures; the regulations pertaining to exhaustion in the BOP do not specifically provide for multiple inmates filing a single grievance (s*ee* 28 C.F.R. 542.10-18); and despite the common administration at Greenville, the camp and prison are run as separate prisons. Furthermore, correspondence from the BOP rejecting Mr. Doss's attempt to correspond with Mrs. Doss states:

> You have the right to appeal this rejection by writing the Warden in care of [FCI-Greenville]. The inmate to whom you addressed your correspondence has been notified that the correspondence has been returned to you and of his or her right to appeal the rejection.

(Doc. 2-2, p. 23). Because the prison adhered to the grievance formalities, the Court cannot in essence rule that they have waived the exhaustion requirement, even though it would appear to

10

be redundant and futile.

For the aforementioned reasons, this Court finds that Mrs. Doss failed to exhaust her administrative remedies and will therefore dismiss all of her claims without prejudice.

B.  Mr. Doss: Qualified Immunity[1]

The defendants argue that they are entitled to qualified immunity on Counts 1 and 2 in that their alleged conduct did not violate a constitutional right, and any right that was violated was not clearly established.

Qualified immunity is a defense available to government officials (including correctional officers) that affords them protection from civil liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008). Whether a defendant enjoys qualified immunity is determined by a two-pronged inquiry. *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled by Pearson v. Callahan*, 129 S. Ct. 808 (2009), held that the court must first determine whether plaintiff has alleged a violation of a constitutional right. If the answer is yes, the court must go on to consider whether that right was clearly established at the time. *Saucier*, 533 U.S. at 210. As to the second inquiry, the contours of the constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Lee*, 533 F.3d at 512.

In *Pearson*, the Supreme Court explained that, in an appropriate case, the district court

---

[1] Although the defendants make the qualified immunity argument with respect to both plaintiffs' claims, the Court will only address it as it applies to Mr. Doss's claims. When requested by the defendants, the Court must apply the exhaustion requirement to *avoid* a decision on the merits and cannot then turn around and make such a decision. *See Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 534-35 (7th Cir. 1999) ("a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits. . . .").

may deviate from rigid adherence to the sequence of the two-step *Saucier* process. "[W]hile the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818.

1. Equal Protection

Defendants argue that correspondence was denied pursuant to a rule of general applicability, with no consideration as to the plaintiffs' faith. Mr. Doss asserts that the marriages of other non-Muslim inmates were not questioned and investigated, but nothing is submitted to support that assertion.

Mr. Doss has not challenged the rationality of the rules requiring a valid marriage under applicable state law in order to qualify for the spousal correspondence privilege, or that the regulation is rationally related to a government purpose. Rather, he argues that prison officials were arbitrary and capricious in that the defendants failed to recognize the marriage in the face of the marriage certificate itself, the declaration of the Bond County Clerk that the marriage certificate would be recognized under Illinois law, and the second marriage ceremony performed in prison.

As a preliminary matter, it is noted that prisoners have a general First Amendment right to send and receive mail, but restrictions on that right are permissible if they are reasonably related to a legitimate penological objective. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Plaintiffs made a First Amendment "freedom of religion" argument, but it was dismissed at the threshold. They do not otherwise attack the prison regulations; rather, they challenge the application of the

regulations to their situation..

The "equal protection" clause protects one from disparate treatment based on membership in a protected class, such as a religion. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). In order for a plaintiff to prevail on an equal protection claim, he must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an undefinable group of individuals. *Sherwin Manor Nursing Ctr. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994). Plaintiff must further show that any deprivation was based on an unjustifiable standard such as race, religion, or other arbitrary classification. *Vukadinovich v. Bartels,* 853 F.2d 1387 (7th Cir. 1988); *Government of V.I. v. Harrigan*, 791 F.2d 34 (3rd Cir. 1988). Simply receiving different or unfair treatment is not enough to raise an equal protection violation. *Huebschen v. Department of Health & Soc. Servs.*, 716 F.2d 1167, 1171 (7th Cir. 1983). The complaint must allege the treatment received was intentional and based on the plaintiff's being a member of an identifiable class to the exclusion of all others. *Id*.

Although plaintiff has *alleged* a constitutional violation (*see* Doc. 14), at this juncture, plaintiff must offer more than mere assertions. There is simply no evidence that the defendants singled plaintiffs out based on religion. Although defendants have not explored this issue in any depth, there can be no doubt that the prison has a legitimate security interest in ensuring that inmates do not lie about being married in order to qualify for the spousal exemption to the general rule that inmates cannot correspond with each other. *See Turner*, 482 U.S. at 89. In the face of a marriage certificate that does not strictly comport with the statutory standard and, in any event, was apparently not registered as required by statute, and in the context where there is evidence indicating the plaintiffs may not be married (at least not to each other), Mr. Doss offers

13

no more than a situation where he received different treatment – which is not a constitutional violation. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202. Therefore, the defendants are entitled to qualified immunity and summary judgment on Mr. Doss's claim in Count 1.

### 2. Due Process

The Court explained in the threshold order that plaintiffs had no liberty or property interest in the prison procedures regarding mail. In procedural due process claims,

> "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Doe by Nelson v. Milwaukee County,* 903 F.2d 499, 502 (7th Cir. 1990). Thus, a procedural due process claim involves a two-part analysis: First, we determine whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then we assess what process was due. *Hamlin v. Vaudenberg,* 95 F.3d 580, 584 (7th Cir. 1996).

*Brokaw v. Mercer Co.,* 235 F.3d 1000, 1020 (7th Cir. 2000) (footnote omitted).

In the Court's threshold order a First Amendment right to correspondence and a liberty interest in familial relations were recognized in accordance with *Owen v. Lash*, 682 F.2d 648, 652 (7th Cir. 1982), and *Brokaw*, 235 F.3d at 1020, respectively (Doc. 14, p. 5). Defendants argue that since the plaintiffs were not married, rights stemming from a marital relationship are not applicable. Mr. Doss asserts there was a valid marriage.

At this juncture, Mr. Doss cannot rest on the assertion that he was legally married. The relevant evidence in the record consists of the defendants' acknowledgment that he had a 1991 Islamic Marriage Certificate, the 2002 Certificate of Islamic Marriage, and the opinion of the Clerk of Bond County, Illinois, that a marriage is recognized in Illinois regardless of whether it

14

is recorded with the County or State. Although Clerk Rietz's opinion is far from authoritative, there is a legal presumption of a valid marriage. Further complicating the analysis is Mr. Doss's unsubstantiated assertion that Mrs. Doss's previous marriage was invalid, thereby rendering her eligible to enter marriage with him.

Whether there is a valid marriage is a question of law, but the legal questions are almost as tangled as the facts. There does appear to be one clear way to cut through this jumble – Mr. Doss does not deny that Mrs. Doss was married before and that there is no record of a divorce. A marriage entered into before a prior marriage is dissolved is prohibited. *See* 750 ILCS 5/212. The affidavit of Keith Chambers indicates that, according to the Cook County Office of Vital Statistics, Mrs. Doss (Judy McCarroll) had been married to William Mimms, and the Cook County Circuit Court had no record of a divorce. (Doc. 48-4, pp. 9-10 (Chambers' affidavit)). Since the Mimms/McCarroll marriage had never been dissolved, it stood as an impediment to any subsequent Doss/McCarroll marriage. Mr. Doss's assertion that the Mimms/McCarroll marriage was invalid cannot carry the day. Because Doss and McCarroll were not free to marry, there was no liberty interest in a familial relationship, and therefore no right to due process.

Insofar as the right to mail can be said to give rise to the right to due process, in *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held restrictions on correspondence between inmates – specifically citing 28 C.F.R. § 540.17 – are rationally related to a legitimate penological interest in security. *Id*. at 92. Therefore, there is nothing to support a right to procedural due process, and the defendants are entitled to qualified immunity and summary judgment on Mr. Doss's claim in Count 2.

Lastly, the Court clarifies again to Mr. Doss that his emphasis on the defendants' violation of prison policies is misplaced. The violation of a prison policy does not, by itself,

establish a constitutional violation. *See Bradich ex rel. Estate of Bradich v. City of Chicago*, 413 F.3d 688, 690 (7th Cir. 2005) (citing *Collins v. Harker Heights*, 503 U.S. 115, 122-24 (1992)).

**VI.     Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the defendants' motion for summary judgment (Doc. 48);

- **DISMISSES without prejudice** Mrs. Doss's claims in Counts 1 and 2 for failure to exhaust administrative remedies;

- **DISMISSES with prejudice** Mr. Doss's claims in Counts 1 and 2 on the basis of qualified immunity; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  July 28, 2009**

>                                    s/ J. Phil Gilbert
>                                    **J. PHIL GILBERT**
>                                    **DISTRICT JUDGE**